UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>   Plaintiff, )<br> )<br>v. )<br> )<br>Real property located at 1119 Sand Hill )<br>Road, Milton VT 05468, )<br>   Defendant *in rem*. ) | Case No. 2:25-cv-00560 |

## DECLARATION

I, David Larkin, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I have been employed as a Special Agent with the Drug Enforcement Administration (DEA) since July of 2021. I am currently assigned to the DEA Burlington Resident Office (BRO), investigating violations of Title 21 of the United States Code (relating to narcotics activity), including the procurement, production, possession, and distribution of illicit chemicals, chemical compounds, and substances commonly referred to as "drugs." I also have experience investigating crimes commonly associated with drug trafficking enterprises to include, money laundering, extortion, human trafficking, various firearm related offenses and various acts of violence. As a Special Agent with the DEA, I have received training related to drug distribution networks, and I have participated in the execution of search warrants involving various mediums and locations.

2. The facts set forth in this declaration are based on my personal knowledge, including what I have learned through my training and experience as a law enforcement officer, my review of documents and other records obtained in the course of this investigation, and information I have obtained in the course of this investigation from witnesses having personal knowledge of the events and circumstances described herein and other law enforcement officers, all of whom I believe to be truthful and reliable. I have not included in this affidavit every detail I know about

this investigation. Rather, I have included only the information necessary to establish reasonable belief that the property listed herein is subject to forfeiture.

3. I submit this affidavit to show reasonable belief to believe that the defendant Property, described below, was used to facilitate criminal offenses including violations of Title 21, United States Code, Section 841 (possession of a controlled substance with intent to distribute it), and therefore is subject to civil forfeiture under 21 U.S.C. § 881(a)(7).

4. The defendant Property is described as a parcel of land with a dwelling thereon, also known as 1119 Sand Hill Road, Milton, VT 05468, with all appurtenances and improvements thereon. Depending on the source searched, the Property is listed as being located in either Milton, Vermont, or Georgia, Vermont. This is due to the rural location of the Property and the fact that Milton USPS services the area. The Property is located in Franklin County, Vermont.

5. The following is the full legal description of the property as detailed in the Town of Georgia, County of Franklin, land records:

> A certain piece of land in the Town of Georgia in the County of Franklin and State of Vermont, described as follows, viz:
>
> A parcel of land consisting of one (1) acres, more or less, with all buildings thereon, situated on the westerly side of Town Road No. 33 and bounded and described as follows:
>
> Commencing at a point on the west side of said Town Road, which point marks the northeasterly corner of land of one Martin, and the southeast corner of the land herein conveyed; thence in a general westerly direction a distance of 267 feet, more or less, along the line which divides parcels hereby conveyed from lands of said Martin's; thence continuing along said line in a westerly direction a distance of 93 feet, more or less, to a point; thence turning to the right and proceeding in a general northerly direction a distance of 100 feet, more or less, to a point alone the line which divides the parcel hereby conveyed from lands and premises now or formerly of Adeline M. Sartwell; thence turning to the right and proceeding in an easterly direction a distance of 360 feet, more or less, along the line which divides the parcel hereby conveyed from other lands now or formerly of Adeline M. Sartwell and lands now or formerly of one McKnight, to a point in the westerly side of said Town Road No. 33; thence turning to the right and proceeding in a southerly direction

along the westerly side of Town Road N. 33 a distance of 150 feet, more or less, to the point or place of beginning.

6. The Property is not currently in the custody of the U.S. government.

## FACTS SUPPORTING REASONABLE BELIEF

7. The DEA BRO, in conjunction with the Milton Police Department (MPD) of Milton, Vermont, began receiving information pertaining to extensive drug distribution occurring within and from the Property during the early weeks of September 2023. Through surveillance and other law enforcement observation techniques, law enforcement observed activity consistent with the distribution of narcotics at the Property. This activity included seven to ten vehicles' arriving at the residence for short periods of time (*e.g.*, 3-5 minutes), and meeting with the homeowner, Gordon RICHARD, on the Property's front yard. Surveillance identified parties' exchanging what appeared to be currency for items quickly tucked into pockets or into bags. During this period of time, the volume of vehicles was so high that some vehicles were required to park down the road while customers waited for an opportunity to enter the Property in order to purchase illicit drugs.

### September 2023 Customer Arrest

8. During the initial weeks of September, members of the MPD observed a motor vehicle leave the Property after stopping at it for a short period of time. The vehicle in question traveled less than a mile from the Property and pulled into an empty lot located near 876 Sand Hill Road, Milton, Vermont.

9. Law enforcement approached the vehicle on foot and observed the occupant with a white powdery substance consistent in appearance with that of powdered cocaine. The subject was seen snorting the substance through the nose, using a rolled-up bill. When confronted by law enforcement about the activity and the behavior, the occupant handed officers a clear plastic baggie and stated that it was cocaine. The occupant was arrested on scene and provided law enforcement

with a brief statement that they purchase cocaine from an individual named "Gordie." The occupant advised that "Gordie" lived down the road.

10. The subject consented to a search of his phone. A manual review of the phone's contents confirmed communications consistent with that of narcotics transactions. Law enforcement asked the operator what number they had for "Gordie," and the operator identified the following: 802-527-0389.

11. A review of the telephone contact listed under "Gordon" confirmed this number, and also identified a second telephone number: 802-309-0028.

12. Upon closer inspection during the subsequent field testing of the narcotics seized from the operator, Officers observed a symmetrical fold of what appeared to be a page taken from a financial magazine, containing a white powdery substance. The substance was field tested and returned presumptively positive for cocaine hydrochloride.

13. A review of cellular subscriber records obtained via administrative subpoena confirmed that both of the above listed numbers were subscribed to Gordon RICHARD, who is the owner of and resident at the Property.

### January 2024 Shooting and First Search Warrant

14. During the last week of January 2024, Vermont State Police (VSP) received a call for service from RICHARD, who stated that he had shot an armed intruder at the Property. RICHARD stated that he had heard a noise in the adjoined section of his home, and that he opened the door to check it out, observing three armed men. He stated that one of the men began to point a weapon at him, to which he responded by shooting the assailant in the side of the body with a black powder firearm. RICHARD stated that the men then fled his residence. The suspect who was shot in this

incident was apprehended outside the Property, where he received immediate, life-saving medical attention.

15. DEA and MPD were notified of the incident and assisted VSP in the search of the Property, pursuant to a state search warrant. During execution of the search warrant, law enforcement recovered approximately $35,000 to $50,000 thousand dollars in cash contained in a large plastic baggie hidden in an HVAC vent in the sub-floor. A further search of the residence yielded a modern long rifle in the drop ceiling of the basement of the Property. Investigators noted that the Property appeared to have multiple altered walls and spots where hidden compartments could be accessed. Investigators located multiple fake light switch "safes." RICHARD explained to investigators that he had nothing of note at the Property that he believed individuals would be attempting to break in to steal.

### **March 2024 Arrests**

16. In the weeks following the shooting incident, investigators observed a continuation of behavior consistent with drug transactions. In the first week of March, law enforcement received information regarding an assault perpetrated by Matthew Richard (hereinafter "Matthew"), Gordon RICHARD's biological son. Matthew was known to have resided at the Property on and off for the prior several years. Law enforcement had not observed Matthew engage in drug transaction behavior during the course of this investigation.

17. On March 7, 2024, VSP attempted to serve Matthew with a protection order at the Property. Matthew was located asleep within the Property and was ultimately apprehended on outstanding state warrants. During this law enforcement encounter, Matthew provided a statement to VSP explaining that his father, Gordon RICHARD, sold large quantities of cocaine from the Property. A search of Matthew incident to arrest led law enforcement to locate a small plastic baggie

containing a symmetrical paper fold with a white powdery substance on Matthew's person consistent with the cocaine seized previously.

18. During the weeks following this incident, law enforcement observed what appeared to be continued distribution activity at the residence. In or around the third week of March, DEA, in conjunction with the MPD, conducted mobile surveillance of the Property in order to confirm continued distribution activity.

19. During the course of this surveillance, investigators observed multiple known customers arrive and depart the Property with behavior consistent with that of narcotics transactions. Investigators observed a blue Toyota 4 Runner go to the Property for a short period of time prior to leaving the Property. The vehicle, which was known to law enforcement from previous alleged drug purchases from the Property, was followed and stopped for traffic infractions. Investigators made contact with the occupants and immediately observed the passenger to be abnormally visibly nervous (shaking uncontrollably, breaking in voice, unable to maintain eye contact).

20. The passenger was separated from the driver and asked if he possessed any narcotics. He immediately stated that he did and provided law enforcement with a sandwich style baggie containing a symmetrical paper fold which looked similar to magazine paper folds previously seized. Also in the bag was an additional cellophane baggie containing a chunky white powder-like substance consistent with cocaine that appeared to be broken off of a kilogram-sized of pressed cocaine powder.

21. The passenger advised that they purchase cocaine from a "guy in Georgia" at least every other day. They consented to a search of their phone, and officers observed on the phone 14 outbound phone calls to RICHARD. Specifically noted were phone calls from earlier that same day, in which the passenger had called the driver, then RICHARD multiple times, and then the

driver again. This pattern of communication would be consistent with arranging the narcotics transaction witnessed by law enforcement.

### March 2024 – Second Search Warrant

22. On March 28, 2024, members of the DEA BRO, with assistance from MPD, Vermont Fish and Game, and VSP, executed a federal search warrant for the Property. During the search, investigators recovered the following items from the Property:

   a. Approximately 1154.7 grams of a white powder-like substance, which field tested presumptively positive for the presence of cocaine;

   b. $123,353.00 in U.S. currency, separated and banded

   c. Three firearms and ammunition:

      i. An older model break-action shotgun;

      ii. A Remington 1903 rifle with a serial number of 3883693; and

      iii. A Lorcin .22 caliber pistol; and

      iv. A large quantity of ammunition in a variety of calibers.

23. RICHARD was placed into investigative detention pending the completion of the search. Once the above items were located, RICHARD was advised of what was found and Mirandized. After receiving and acknowledging the *Miranda* warning, he waived his right to have an attorney present. RICHARD then stated that, every four to six weeks, he obtained approximately one kilogram of powdered cocaine at the Property. RICHARD explained that he used the Property to possess, process, and distribute the cocaine. RICHARD explained that he would prepackage and sell cocaine to various customers in the Northern Vermont area on a near-daily basis. RICHARD stated that he used his cell phone to communicate and arrange these deals, and that he had been selling cocaine from the Property for roughly 20 years.

**October 2024 – Third Search Warrant**

24. On March 29, 2024, RICHARD was charged by complaint in federal court. The government did not seek his detention, and he was released subject to conditions pending further proceedings. On April 11, 2024, a federal grand jury sitting in Burlington, Vermont, indicted RICHARD for knowingly and intentionally possessing cocaine with the intent to distribute it, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C).

25. In the latter half of September of 2024, law enforcement was informed that RICHARD was back to dealing cocaine from the Property despite being subject to conditions of release, which included a requirement that he not commit additional crimes.

26. In or around the week of October 7, 2024, the DEA, in conjunction with MPD and the Franklin County Sheriff's Office established fixed and roving surveillance at the Property. Law enforcement again observed activity consistent with drug distribution, involving individuals previously identified as customers and facilitators of RICHARD's. Law enforcement again seized cocaine from an individual leaving the Property after a short visit, which was, again, packaged in paper folds consistent with cocaine previously seized from the Property.

27. On October 9, 2024, the DEA obtained a federal search warrant for the Property.

28. Later the same day, members of the DEA BRO, in conjunction with MPD, Vermont Fish and Game, and FCSO executed the residential warrant on the Property.

29. A search of the Property resulted in the seizure of approximately $6,333.00 USD and approximately 265 gross grams (including packaging) of cocaine powder, some of which was partitioned and packaged in predetermined weights and wrapped in magazine paper folds consistent with the packaging of cocaine previously seized from the Property.

30. Prior to the search of the Property, RICHARD was issued *Miranda* warnings, which he waived. RICHARD first denied resumption of drug trafficking activity. During the course of the search, agents presented RICHARD with the items ultimately seized, in response to which RICHARD claimed law enforcement must have missed those items during the previous search of the Property. Upon completion of the search, law enforcement advised RICHARD of what was located and that he would be going to a detention center. RICHARD then explained that he was conducting sales from the Property again despite being out on conditions of release. He further stated that he had received ounces of powder cocaine for $800 per delivery, from a male who resided in Burlington, Vermont, on several occasions.

### January 2025 Guilty Plea

31. On January 28, 2025, RICHARD pleaded guilty to knowingly and intentionally possessing with the intent to distribute cocaine, a Schedule II controlled substance, on or about March 28, 2024, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C). *United States v. Gordon Richard*, No. 24-cr-40 (D. Vt. Jan. 28, 2025) (ECF No. 60).

32. Prior to the plea hearing, the parties filed a joint Plea Memorandum, in which RICHARD stipulated that if the matter had proceeded to trial, the government's evidence would have established the following facts:

   a. In March of 2024 and years prior, GORDON RICHARD resided at 1119 Sand Hill Road in Milton, Vermont, a residence he owned jointly with his former spouse (the "Residence").

   b. On or about March 28, 2024, law enforcement executed a search warrant at the Residence. During the execution of that search warrant, law enforcement recovered from hidden drawers and other obscured compartments in the house, as well as other areas, approximately 1.3 kilograms of powder cocaine and approximately $123,353.00 in U.S. currency.

   c. During a post-arrest statement, RICHARD admitted to having distributed cocaine from the Residence for a number of years.

    d.  Prior to execution of the search warrant on March 28, 2024, RICHARD possessed the approximately 1.3 kilograms of cocaine with the intent to distribute it, and at least $85,000.00 was proceeds of his drug trafficking activity. *Id*. (ECF No. 59).

## **CONCLUSION**

33. For the reasons outlined above, and based on my training and experience, I believe there is reasonable belief that Gordon RICHARD utilized the defendant Property to sell narcotics undetected by law enforcement for over twenty years. RICHARD used the Property to obtain, process, package, and distribute illicit drugs into the community while using the proceeds of this illicit business to further his drug trafficking initiatives in violation of Title 21, United States Code, Sections 841 (possession with intent to distribute) and therefore is subject to civil forfeiture under 21 U.S.C. § 881(a)(7).

I declare under penalty of perjury that the foregoing is true and correct.

Dated at Burlington, in the District of Vermont, this 5th day of June, 2025.

                                            /s/ *David Larkin*
                                            DAVID LARKIN
                                            Special Agent
                                            Drug Enforcement Administration